# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

SHARON SANDS,                           )
                                        )
        Plaintiff,                      )
                                        )
VS.                                     )          No. 1-03-1333-T-An
                                        )
JACKSON STATE COMMUNITY                 )
COLLEGE, et al,                         )
                                        )
        Defendant.                      )

---

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AND
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Sharon Sands filed this action against her former employers, Defendants Jackson State Community College and Tennessee Board of Regents, alleging race discrimination, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. Defendants have filed a motion for summary judgment [DE #57], and Plaintiff has filed a cross motion for summary judgment [DE #58].  The parties have filed responses to the motions.[1]  For the reasons set forth below, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

---

[1] On March 31, 2006, Plaintiff was granted leave to file a reply to Defendants' response but did not do so within the five day time period allowed by the court.

Procedure.  To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however.  Anderson, 477 U.S. at 249.  Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

The undisputed facts are as follows.  Plaintiff is a white female who was employed in the human resources department of Jackson State Community College ("JSCC").  April

March, a black female, was also employed in that department.  Diane Harris, a white female, was the director of the human resources department and was the direct supervisor of Plaintiff, March, and Susan Mullins, a white female.  Horace Chase, a black male, was Harris' direct supervisor.  Chase's direct supervisor was the president of JSCC, Dr. Charlie D. Roberts, a black male.

Plaintiff, Mullins, and March were co-workers who reported directly to Harris.  They had no supervisory responsibilities over each other, and each had separate job functions. JSCC employees keep track of their own time, attendance, and leave usage which they report to their supervisor on a monthly time sheet.  Plaintiff, March, and Mullins routinely submitted their monthly time sheets to Harris.  Plaintiff and Mullins complained to Harris about March's time-keeping.  Harris permitted March to correct her time sheets.  Plaintiff's time-keeping was correct.[2]

Plaintiff and Mullins complained to Harris about March's poor job performance and about her performing personal tasks while at work.  Plaintiff was an good employee and did not perform personal tasks while at work.   Harris counseled March about her job performance and about her performing personal tasks while at work but took no formal disciplinary action against her.  After complaining for approximately two years, on May 10, 2002, Plaintiff filed what she termed a grievance with Harris concerning the problems with March's work performance.  The grievance requested that Harris, Roberts, and Chase recuse

---

[2] There is no evidence of any employee, black or white, other than March, in the human relations department who submitted incorrect time sheets.  Jane Ellis, the employee cited by Plaintiff as a "similarly situated employee," worked in another department.  Sands depo. at p. 9 (Q. "Ms. Ellis was a secretary in another department."  A.  "Correct."  Q. "Had a different supervisor?"  A.  "Correct.")

themselves from the process for alleged bias.

On May 15, 2002, Harris informed Plaintiff that the grievance would be treated as a complaint.[3]  Under JSCC's grievance/complaint procedure, a grievance that is not resolved by a meeting between the employee and supervisor may be referred to a committee, while a complaint is not entitled to a committee review.  Harris, Roberts, and Chase did not recuse themselves.  On May 21, 2002, Plaintiff filed a grievance that specified claims of retaliation and racial discrimination.[4]

Harris did not discuss with Roberts or Chase March's job performance or Plaintiff and Mullins' complaints about March.  Chase would not meet with Plaintiff until after she met with Harris.  On May 28, 2002, Plaintiff and Harris met in an attempt to resolve Plaintiff's complaints.  Harris sought written support for the complaints, which Plaintiff did not provide.[5]

On June 10, 2002, Harris issued Plaintiff a letter of warning concerning Plaintiff's continual complaints about March, going outside the chain of command, avoiding Harris' questions, perceived lack of respect for Harris, and rudeness to a college dean.  Prior to this letter, Harris had never issued any written warnings to her employees.  Plaintiff resigned on June 14, 2002.  Plaintiff alleges claims of constructive discharge, reverse race discrimination, and retaliation in violation of Title VII.

---

[3] The parties dispute whether Harris was advised to do so by Defendants' legal counsel.  This dispute is not a material fact that would preclude summary judgment.

[4] The parties dispute whether the May 21, 2002, grievance amended the prior grievance to include these claims or whether the prior grievance already included the claims.  This dispute is not a material fact that would preclude summary judgment.

[5] Plaintiff contends that she had already given the requested documentation to Harris.

Discrimination Claim[6]

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), established a three-part test

for allocating the burden of proof in employment discrimination cases in the absence of

intentional discrimination. First, the plaintiff must prove a prima facie case of discrimination

by establishing:

> (1) that she was in a protected class or minority; (2) that she was qualified for
> the position; (3) that despite these qualifications, she was subjected to an
> adverse employment decision; and (4) that someone outside of the protected
> class was treated differently.

Id. at 802; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981);

Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th Cir. 2003). In a reverse

discrimination case such as this one, in which the plaintiff belongs to a majority group, a

prima facie case is established upon a showing that "'background circumstances support the

suspicion that the defendant is that unusual employer who discriminates against the

majority'··· and upon a showing that the employer treated differently employees who were

similarly situated but not members of the protected group." Yeager v. Gen. Motors Corp.,

265 F.3d 389, 397 (6th Cir.2001) (quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d

63, 67 (6th Cir.1985)).

The burden of establishing a prima facie case is not onerous. Burdine, 450 U.S. at

253-54. After the plaintiff proves a prima facie case, the employer has the burden of

articulating "some legitimate, nondiscriminatory reason for the employee's rejection." Id.

---

[6] Although it is not clear whether Plaintiff is alleging that she was discriminated against when Defendants allegedly retaliated against her or whether she is alleging a discrete discrimination claim, the court has analyzed each claim separately.

Finally, if the employer is able to carry its burden, then the burden returns to the plaintiff, and she must prove that the reasons offered by the employer were merely a pretext for discrimination rather than the true reasons for the employer's actions. Id. at 804. "The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination." St Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (1993). The plaintiff has the ultimate burden of proving intentional discrimination. Burdine, 450 U.S. at 256.

If the plaintiff presents direct evidence of discrimination, she need not make out a prima facie case under the McDonnell Douglas framework. LaPointe v. United Autoworkers Local 600, 103 F.3d 485, 487-88 (6th Cir.1996). As direct evidence of discrimination, Plaintiff relies on statements allegedly made by Harris which, according to Plaintiff, indicate that Harris was treating March differently because she was black. Specifically, Plaintiff points to Harris' alleged statement that she couldn't "fire April because Dr. Roberts wouldn't let her because April is black." Sands depo. at p. 25. Other instances of direct discrimination, according to Plaintiff, are: Harris' statement to Jean Redding, another JCSS employee, that Roberts would not let anything happen to black people at the college, Redding depo. at p. 69; Harris' statement to Plaintiff and Mullins when March was hired that JSCC needed to hire a black employee in the human resources department, Sands depo. at p. 71; Harris' statement to Plaintiff that Roberts wanted Harris to hire a black person for Plaintiff's position, Sands depo. at p. 71; Harris depo. at p. 51.; Harris' statement to Plaintiff that she would have to let March correct her time sheets because Roberts would not let her

fire March, Sands depo. at pp. 302-303; Harris' statement to Plaintiff and Mullins that a white employee, Denise Holloway, was blackballed by Roberts for accusing him of favoritism toward black employees, Sands depo. at pp.119-121; Harris depo. at pp. 126-127.[7] Defendants contend that, even if the statements were made,[8] they do not constitute direct evidence of discrimination.

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least [one of the] motivating factor[s] in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999). "[D]irect evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 859, 865 (6th Cir.2003). Thus, an isolated, ambiguous remark, even if proved, is not direct evidence of discrimination. Weigel v. Baptist Hosp. of East Tenn., 302 F.3d 367, 382 (6th Cir.2002).

Plaintiff contends that the trier of fact could find that Harris' statements indicate that she made race a factor in the decision to either discipline or terminate an employee.[9] In

---

[7] Because Defendants are entitled to summary judgment, the court need not decide whether Harris' alleged statements are admissible as nonhearsay party admissions under Rule 801(d)(2)(D) of the Federal Rules of Evidence. ("A statement is not hearsay if ⋯ [t]he statement is offered against a party and is ⋯ a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]").

[8] Defendants do not concede that Harris did, in fact, make these statements.

[9] Plaintiff's deposition testimony that Harris stated that Roberts wanted to hire a black person to fill Plaintiff's position but Harris insisted on hiring Plaintiff because of her computer knowledge, Sands depo. at pp. 71-72, belies Plaintiff's contention that Harris made employment decisions based on race rather than merit.

support of her position, Plaintiff relies on the holding in Nguyen v. Cleveland, 229 F.3d 559, 563 (6th Cir.2000), that "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."  Plaintiff notes that the court in  Johnson v. Univ. of Cincinnati, 215 F.3d 561 (6th Cir.2000), found direct evidence of discrimination when the university president purportedly said that "[w]e already have two black vice presidents. I can't bring in a black provost" because these comments required no inference to conclude that racial considerations motivated, at least in part, the decision to terminate the plaintiff. Id. at 577 n.7.

Johnson is inapposite to the present case because, here, Plaintiff suffered no adverse employment action.  Plaintiff complains that March was allowed to perform poorly and that she had to work harder because of March's poor job performance.  However, Plaintiff testified that she assisted with part of March's job responsibilities, such as occasionally answering the phone, of her own volition because she did not want departmental employees to "look like idiots."  Sands depo. at p. 80.  Plaintiff also testified that she did not have to work overtime because of March, other than voluntarily taking home material one weekend. Id. at p. 81.  Plaintiff missed one doctor's appointment because March was late getting back from lunch.  Id. at p. 82-83.  Plaintiff was not told to stay until March returned;  instead she did it because she "was being responsible."  Id. Harris was not in the office at the time of the missed appointment.  Id. at p. 83.  Therefore, even if Harris was lenient toward March because of March's race, Plaintiff did not suffer from that leniency.

Plaintiff's contentions are similar to those that were rejected in <u>Wehunt v. R.W. Page Corp.,</u> 352 F. Supp.2d 1342 (M.D. Ga. 2004).

> The core of Plaintiff's claim is that Turner and Rutledge did not receive the kind of discipline that Plaintiff thought was warranted, and she suffered because of it. The role of this Court is to address whether illegal discriminatory motive underlies a challenged employment decision; it is " 'not to act as a super personnel department that second-guesses employers' business judgments." ' <u>Wilson v. B/E Aerospace, Inc.,</u> 376 F.3d 1079, 1092 (11th Cir.2004) (quoting <u>Lee v. GTE Fla., Inc.,</u> 226 F.3d 1249, 1254 (11th Cir.2000)).[10] While one may sympathize with the stress caused to Plaintiff by the extra workload she received due to Defendants' arguably ineffective motivation of Turner and Rutledge, Plaintiff has produced no evidence to support her claim that she was treated differently because of her race. . .

> Even if Plaintiff was able to establish that she was treated differently from a similarly situated black comparator, she must also show that she was subjected to an adverse employment action. Plaintiff has produced no evidence that she was fired, demoted, transferred, formally disciplined, or subjected to a reduction in responsibilities or pay. She claims that she had to assume additional work assignments to take up the slack for the poor performance of other employees. Although an adverse employment action need not rise to the level of an ultimate employment decision to be actionable, <u>Wideman v. Wal-Mart Stores, Inc.,</u> 141 F.3d 1453, 1456 (11th Cir.1998), the employer's conduct must create a "serious and material" change to the terms, conditions, or privileges of the employee's employment. <u>Davis v. Town of Lake Park Florida,</u> 245 F.3d 1232, 1239 (11th Cir.2001). "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." <u>Id.</u>

Although it is not entirely clear from Plaintiff's pleadings and briefs, it appears that Plaintiff's claim is in the nature of a work assignment claim: she had to work harder because black employees were allowed to work less. The Eleventh Circuit has recognized that such "work assignment claims strike at the very heart of an employer's business judgment," and therefore, it would be "unusual" for a change in work assignments to be so "substantial and material

---

[10] The fact that Plaintiff was dissatisfied with Defendants' business judgment is borne out by her testimony that her grievance concerned "two years of complaints put together in a grievance where Diane [Harris] did not do her job . . . Diane did not do her job."  Sands depo. at p. 179.

that it does indeed alter the terms, conditions or privileges of employment."
Id. at 1244-1245. The Court finds that Plaintiff has failed to produce sufficient
evidence from which a reasonable jury could conclude that she was subjected
to an adverse employment action.

Id. at 1352-53.

Moreover, the Sixth Circuit recently reiterated that

[e]mployment actions that are de minimis are not actionable under Title VII.
Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir.2000). "If every
low evaluation or other action by an employer that makes an employee
unhappy or resentful were considered an adverse action, Title VII would be
triggered by supervisor criticism or even facial expressions indicating
displeasure." Primes v. Reno, 190 F.3d 765, 767 (6th Cir.1999).

To prevent lawsuits based upon trivial workplace dissatisfactions, we require
that a plaintiff prove the existence of an "adverse employment action" to
support a Title VII claim. Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th
Cir.1999) (defining "adverse employment action" as a "materially adverse
change in the terms and conditions of [plaintiff's] employment").

White v. Burlington Northern & Santa Fe R. Co., 364 F.3d 789, 795-96 (6th Cir. 2004), *cert*

*granted in part*, 126 S.Ct. 797 (2005).

Plaintiff's "workplace dissatisfactions" with the perceived favoritism shown toward

March is not actionable under Title VII.  See Laprise v. Arrow Intern., 178 F. Supp.2d 597

(M.D.N.C. 2001) ("Plaintiff cannot rely merely on her subjective belief that her employer

wrongfully failed to discipline a coworker as evidence of an adverse employment action

directed toward Plaintiff. . . .Furthermore, Plaintiff has offered no case law to support her

contention that allowing some workers to perform less work or speaking socially to black

workers and bypassing white workers rises to the level of an "adverse employment action"

that is necessary to support a claim under Title VII or the ADEA. Rather, to the contrary, the

courts have stated that Title VII is not intended to remedy 'trivial discomforts endemic to employment.'" (citation omitted)).

Even though Harris never took disciplinary action against March for her poor job performance or incorrect time sheets, she also never took disciplinary action against Plaintiff or any other white employee for similar conduct.[11] Thus, assuming that Harris made the comments attributed to her, there was no "specific link" between those statements and any adverse employment action against Plaintiff. See Antonucci v. Goodyear Tire & Rubber Co., 1994 WL 49569 (6th Cir.) (Even when there is direct evidence of discriminatory comments or remarks, the plaintiff may not prevail unless she shows an actionable injury.)

Not only has Plaintiff failed to present direct evidence of reverse racial discrimination, she cannot establish a prima facie case under the McDonnell Douglas burden shifting analysis because she did not suffer an adverse employment action in relation to her discrimination claim.  Plaintiff has failed to show that Defendants "treated differently employees who were similarly situated but not members of the protected group." Consequently, Defendants are entitled to summary judgment on this claim.

<u>Retaliation Claim</u>

Plaintiff also alleges that she was retaliated against for complaining of perceived discrimination when (1) she was not allowed access to Defendants' grievance policy and (2) she was issued a warning by Harris.  Title VII's retaliation provision, Section 704(a), provides:

---

[11] The written warning issued to Plaintiff did not concern poor job performance or time sheets.  The warning is discussed in relation to Plaintiff's retaliation claim.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To prevail on a claim for retaliation under Title VII, a plaintiff must establish a prima facie case by demonstrating that (1) the plaintiff engaged in an activity protected by Title VII; (2) the exercise of the plaintiff's civil rights was known to the defendant; (3) the defendant thereafter undertook an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." Virts v. Consol. Freightways Corp., 285 F.3d 508, 521 (6th Cir.2002).

A causal connection is shown when the plaintiff produces sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. A causal connection can be shown through direct evidence or through knowledge on the part of the defendant plus a closeness in time that creates an inference of causation. McNeail-Tunstall v. Marsh USA, 307 F. Supp.2d 955, 973 (W.D. Tenn. 2004).

Once an employee makes out a prima facie case, the burden shifts to the employer to provide legitimate, nondiscriminatory reasons for the adverse employment action. Id. The employee "who bears the burden of persuasion throughout the entire process" must then show that "the proffered reason was a mere pretext for discrimination." Id.

Plaintiff's retaliation claim fails because the alleged retaliatory actions do not rise to

the level of an adverse employment action.[12]   Examples of adverse employment action include demotions, reductions in salary or job responsibilities, offers of early retirement or continued employment on terms less favorable than the employee's former status, or harassment by the employer calculated to encourage the employee's resignation. Logan v. Denny's, Inc., 259 F.3d 558, 569 (6th Cir.2001). A formal reprimand may constitute adverse employment action if it is more than criticism.  Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir.1998). See also Nickell v. Memphis Light, Gas & Water Div., 76 Fed.Appx. 87, 93 (6th Cir.2003) (criticism from a supervisor or a supervisor's request to be kept informed of certain communications do not constitute adverse employment actions) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir.2000); Smart v. Ball State Univ., 89 F.3d 437, 442 (7th Cir.1996)) (negative performance evaluation unaccompanied by a materially adverse change in the terms and conditions of employment does not constitute an adverse employment action). "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Primes v. Reno, 190 F.3d 765, 767 (6th Cir.1999).

In Allen v. Michigan Dep't of Corrections, 165 F.3d 405 (6th Cir.1999), the Sixth Circuit held that an employee's receipt of "counseling memoranda" disciplining him for specific rules infractions did not amount to materially adverse actions for purposes of the plaintiff's Title VII race discrimination claim. See also Reid v. Madison County, 1999 WL

---

[12] The court will assume that Plaintiff's complaints about March were protected.

196560 (6th Cir.) (reprimand did not constitute materially adverse action in Title VII retaliation claim when the plaintiff did not suffer time off, suspension, loss of pay or benefits, or change in duties).

Although some other circuits have found that, in certain circumstances, a reprimand may constitute an adverse action, see, e.g., Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir.1998); Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir.1997); Marx v. Schnuck Mkts., Inc., 76 F.3d 324 (10th Cir.1996), in each of these cases the reprimand was issued as part of a larger pattern of retaliation for protected activity and often culminated in a tangible action.

Here, the one written warning received by Plaintiff was not part of a pattern of "papering" her personnel file. Nor did it change the terms or conditions of Plaintiff's employment. The June 10, 2002, memorandum from Harris to Plaintiff states that its purpose was to "call your attention to some problems that require attention." Exhibit 26, Sands depo. The problems were listed as (1) an incident in which Plaintiff was rude to a dean; (2) Plaintiff's distribution of her written complaints to those outside the line of authority; (3) Plaintiff's refusal to cooperate with Harris in discussing Plaintiff's complaints; and (4) Plaintiff's "absence of good faith and lack of respect for the [grievance] process." Id. Plaintiff was cautioned that "these behaviors are not acceptable" and that Harris expected Plaintiff "to follow appropriate processes, to control [her] anger in the workplace, to cooperate with co-workers, and to speak respectfully to [Harris} and to others." Id. Plaintiff was warned that, if she did not correct these problems promptly, "further disciplinary action

will be taken, up to and including termination." Id. The memorandum stated that a copy would be placed in Plaintiff's personnel file.

Plaintiff received no loss of pay or benefits and no change in duties as a result of the written warning. See Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885-86 (6th Cir.1996)(stating that an adverse employment action must typically constitute a "materially adverse change in the terms of ⋯ employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir.1993)).  Consequently, she has failed to show that her reprimand was a materially adverse employment action.[13]

Plaintiff also complains that she was not allowed to properly grieve her complaint and that this was an act of retaliation.  Plaintiff contends that she was denied the opportunity to utilize the grievance process and was "forced" to meet with Harris whom she had accused of discriminating against her.  Plaintiff's contentions are without merit.

Even though Plaintiff's first complaint was not deemed a grievance which would have entitled it to committee review, Plaintiff quickly amended the complaint to specifically allege discrimination so that the complaint became a grievance under Defendants' written policy. See Plaintiff's Memo. at p. 3 ("After Harris advised Sands that she was not treating her

---

[13] Plaintiff has attempted to show that the allegations in the written warning were not valid.  Even assuming that the allegations are unfounded, the written warning did not alter the terms or conditions of her employment and was, therefore, not an adverse employment action.

grievance as a grievance but as a complaint, Sands amended her grievance to specifically allege that Harris had engaged in racial discrimination and that based upon Harris her instructions to engage in race discrimination came from Roberts.")  Thus, Plaintiff became entitled to committee review of her complaint/grievance.

Plaintiff attempted to bypass Defendants' written policy which provided that she would have to meet with Harris, her supervisor, by stating that "there was no way that [Harris] could be fair."[14]  Sands depo. at p. 166.  Plaintiff also stated in her grievance that a meeting with Harris "would be considered as retaliation."  Id. at p. 177. Plaintiff has pointed to nothing in Defendants' written grievance policy that gave her the authority to opt out of a meeting with her supervisor as the first step of attempting to resolve the grievance because she perceived her supervisor to be biased.  Plaintiff's labeling of the requirement of a meeting with her supervisor as an act of retaliation does not make the requirement retaliatory. Defendant's neutral enforcement of its grievance policy was not retaliation.

As an alternative to showing the existence of an adverse employment action, a plaintiff may support a Title VII claim by showing that "plaintiff was subjected to severe or pervasive retaliatory [or other discrimination based] harassment by a supervisor." Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir.2000).  To determine whether harassment is "severe or pervasive," the courts consider all of the circumstances, including frequency, severity, whether it is physically threatening or humiliating, or a mere offensive

---

[14] It is somewhat perplexing how Harris' alleged leniency toward March was not "fair" to Plaintiff in the absence evidence of similar conduct by Plaintiff.  See Sands depo. at p. 33 ("We know that Diane can't be fair because, for two years, she wasn't. So my point is to then, let a committee, an unbiased committee, look at everything, let them make the decision, because Diane could not be fair to me.")  There is no evidence that Harris treated Plaintiff differently than she treated March.

utterance; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

The workplace environment becomes "hostile" for purposes of Title VII only when the offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); see also Pennsylvania State Police v. Suders, 542 U.S. 129 (2004). "'In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances.'" Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).

In the present case, Plaintiff alleges that Harris cornered her on several occasions after waiting for the other employees to leave the office and asked Plaintiff why she was "doing this to her." Sands depo. at pp. 177, 178. Plaintiff also states that two employees under Harris resigned within a month of each other due to Harris' "threats and actions." Sands depo. at pp. 217, 218. Plaintiff further contends that she was given the "cold shoulder" by Harris. Sands depo. at pp. 276. Additionally, she states that Harris' requests for information to support her complaint/grievance constituted harassment because Plaintiff had already given her this information.

Plaintiff filed her first complaint/grievance on May 10, 2002. She resigned on June 14, 2002. Thus, any retaliatory acts occurred during a time period of slightly more than a month.

The plaintiff in <u>Akers v. Alvey</u>, 338 F.3d 491 (6th Cir. 2003), alleged that her supervisor retaliated by ignoring her, encouraging coworkers to ignore her, criticizing her work, and withholding her mail. The court found that the alleged conduct, confined to a two-week period, was of "short duration," "relatively mild in nature" and insufficient to reach 'the level of "severe or pervasive" conduct required' for a retaliation claim. <u>Id.</u> at 499. Plaintiff' allegations cover a similarly short period of time and are much milder than the criticism and conduct alleged in <u>Akers</u>.

Plaintiff was never subjected to termination, demotion, reduction in salary, reassignment of working hours, disciplinary suspensions, adverse performance evaluations, reduction in job responsibilities or title, loss of benefits, reassignment to menial or degrading work, or physical threats. Plaintiff's complaints of "harassment" are, at best, de minimis. Even if Harris became cool to Plaintiff, asked for information that had already been given to her, gave Plaintiff a warning memorandum, and refused to deviate from the established grievance policy by appointing an "unbiased" committee to hear Plaintiff's grievance, these incidents are not "severe or pervasive" enough to support a claim for retaliation. <u>See Barnes v. United Parcel Service</u>, 366 F. Supp.2d 612 (W. D. Tenn. 2005) (Allegations that Plaintiff was told by supervisor to leave the yard after his shift and was intimidated and overly supervised, the start time of his drive was improperly changed, his delivery runs were cut, he was denied the opportunity to ask questions regarding his check, he received an improper warning letter from his supervisor, his supervisor pointed her finger in his face and yelled at him, he was denied the right to use the bathroom at work, and he was pushed in the chest

by his supervisor were not sufficiently severe or pervasive to support a claim for retaliatory harassment.)

Constructive Discharge Claim

Plaintiff contends that she was constructively discharged from her employment on June 14, 2002, when she resigned after "threats of termination, amid harassment and intimidation and after suffering retaliation" from Harris.[15]

A constructive discharge occurs when an employee shows that her employer subjected her to conduct so severe that a reasonable person in the employee's place would have felt compelled to resign.  Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885-886 (6th Cir.1996).  Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but the following factors, singly or in combination, are relevant: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of continued employment on terms less favorable than the employee's former status.  Logan v. Denny's Inc., 259 F.3d 558, 559 (6th Cir. 2001).  None of these factors are present in this case.

The written warning given to Plaintiff on June 10, 2002, merely stated that, if she did not correct certain  problems "further disciplinary action will be taken, up to and including termination."  Exhibit 26, Sands depo.  Despite Plaintiff's feeling that Harris was trying to

---

[15] Plaintiff's retaliation claim and constructive discharge claim overlap to an extent.  However, the constructive discharge standard is more onerous than the hostile work environment standard. Pennsylvania State Police v. Suders, 542 U.S. 129, 133-34 (2004) (describing the constructive discharge theory as requiring a "further showing" beyond that necessary to support a hostile work environment claim).

"set [her] up to get [her] to be insubordinate so she could fire [Plaintiff],"Sands depo. at p. 245, there is no evidence in the record to support this "feeling."[16]  Although constructive discharge may constitute an adverse employment action, a plaintiff cannot show constructive discharge merely on the basis of her own belief or suspicion that she might some day be terminated. Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir.2002).

The other "threats" cited by Plaintiff were not threats made toward her, but allegedly toward other employees if they helped Plaintiff. Compare Mullins depo. at p. 49 (Q. Do you know if Ms. Harris ever made any threats towards Ms. Sands?"  A. I don't know of any.") with Mullins depo. at pp. 42-43 ("Ms. Harris came into my office . . . and her words were, I don't think you want me as an enemy, and if you continue to help Sharon in this process of her grievance or complaint . . . I know enough things that you have said and done that I can cause you lots of problems."

As discussed above, even if Harris was "cold" or "short and curt" with Plaintiff for the one month period after the grievance was filed, see Mullins depo. at p. 48, the alleged harassment was not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. " Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

Furthermore, an employee who quits without giving her employer a reasonable chance to work out a problem, as in the present case, is not constructively discharged. See

---

[16] Jean Redding, another of Defendants' former employees, testified that Harris told her that Chase "agreed to get rid of the troublemaker."  Redding depo. at p. 89.  Laurie Weaver testified that Susan Mullins told her that Harris "was out to get" Plaintiff.  Weaver depo. at p. 60. These statements are inadmissible hearsay which cannot be used to defeat summary judgment.  See Fed. R. Civ. P. 56.

Shealy v. Winston, 929 F.2d 1009 (4th Cir.1991); Garner v. Wal-Mart Stores, Inc., 807 F.2d

1536 (11th Cir.1987); Raley v. Board of St. Mary's County Comm'rs, 752 F. Supp. 1272 (D.

Md.1990).

In essence, Plaintiff was unhappy with what she perceived to be Harris' lax

supervision of March, even though she herself was only minimally affected.[17] She made it

her mission to correct the perceived problem and orally complained about March for two

years before reducing her complaints to writing.  When Harris asked for written clarification

and documentation of those complaints, Plaintiff refused on the ground that she had

previously provided some documentation, although she did not explain why she did not

provide written clarification of her complaints, even if she no longer had the documentation.

Plaintiff demanded that Harris, Chase, and Roberts recuse themselves from the grievance

process on the basis of unsupported allegations of bias.  When they did not do so, she went

outside the chain of authority and sent copies of her complaints to those she perceived to be

over Harris, Chase, and Roberts.  Harris' patience with Plaintiff's continual complaints

finally wore thin, and she issued a relatively mild written rebuke.  Apparently, that was too

harsh for Plaintiff, and she resigned from her employment, complaining that Harris had

forced her from her job.

"To constitute a constructive discharge, the employer must deliberately create

intolerable working conditions, as perceived by a reasonable person, with the intention of

forcing the employee to quit and the employee must actually quit." Goldmeier v. Allstate

---

[17] It is undisputed that Harris made March correct her time sheets.  Plaintiff has not stated what else she wanted Harris to do in relation to March.

Insurance Company, 337 F.3d 629, 635 (6th Cir. 2003).  The court finds, as a matter of law, that a reasonable person in Plaintiff's position would not have felt forced to resign. Consequently,  Plaintiff's constructive discharge claim is without merit.

<u>Summary and Conclusion</u>

Because Defendants have pointed to evidence in the record which refutes Plaintiff's claims of discrimination, retaliation, and constructive discharge and Plaintiff has failed to offer countervailing evidence to establish that there are disputed issues of material fact as to her claims, Defendants' motion for summary judgment is GRANTED.  Plaintiff's motion for summary judgment is DENIED.  The clerk is directed to enter judgment accordingly. IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE